73 F.3d 374
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
William G. KILPATRICK, Defendant-Appellant.
 No. 94-1481.
 United States Court of Appeals, Tenth Circuit.
 Jan. 8, 1996.
 
 Before BRISCOE, SETH and LUCERO, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 The Appellant's basic point on appeal is not a challenge to the sufficiency of the evidence. Instead, the Appellant strongly argues that there was a pervasive error by the admission into evidence of coconspirator hearsay statements by the Government witnesses contrary to the substance and method required by Federal Rules of Evidence 801, more particularly, contrary to subparagraph (a)(2), to permit such an exception to the general hearsay rules. This is an exception by the negative definition as to what is "not hearsay" in Rule 801(d)(2).
 
 
 3
 Appellant's second issue on appeal raises an ineffective trial counsel question. The third issue concerns Appellant's sentence.
 
 Rule 801
 Federal Rules of Evidence
 Rule 801 provides:
 
 4
 "Definitions
 
 
 5
 "The following definitions apply under this article:
 
 
 6
 ....
 
 
 7
 "(d) Statements which are not hearsay.--A statement is not hearsay if--
 
 
 8
 ....
 
 
 9
 "(2) ... The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."
 
 
 10
 Under Rule 801, the required elements are clearly stated and usually present no difficulties. The problem usually arises as to how and when the elements are to be determined, but as to this we are governed by our en banc opinion in United States v. Perez, 989 F.2d 1574 (10th Cir.).
 
 
 11
 The first day of trial the defense made an objection to a prosecutor's question as calling for a "hearsay answer." No other grounds were stated for the objection. The Court asked: "Is this a co-conspirator statement ... ?" The Government suggested "agency" or "coconspirator." The defense stated there was then no evidence of a conspiracy, and the prosecution agreed. The objection was sustained.
 
 
 12
 There was no further reference during the trial itself to coconspirator hearsay except during the second day. (Tr. at 395.) By then several witnesses had testified and there were many exhibits admitted as indicated by the transcript page number. It is the objection made at this time upon which Appellant rests his entire argument as to hearsay.
 
 
 13
 The witness on the stand at this time was a person who had faced charges arising from the same transactions as the trial here concerned. He had entered a guilty plea under a plea agreement and was serving his sentence. The person referred to in the statement also appeared as a witness at the trial. See United States v. Gary, 999 F.2d 474 (10th Cir.). It is upon a question propounded to this witness after three or four hours on the stand that is the sole basis for Appellant's assertions that here is where the error occurred which requires a remand by reason of a failure to conform to Federal Rule of Evidence 801. This error was by the admission into evidence without a hearing of the answer of the witness because it was within the "not hearsay" definition in the Rule. The argument of Appellant seems to be based on the assumption that this one instance infected the entire trial as there are a considerable number of other hearsay statements by coconspirators admitted without objection. It should be pointed out here that the objection was on non-constitutional grounds only.
 
 
 14
 Some detail is required to describe the single ruling and the trial court's response. As mentioned, this took place after considerable testimony was given by the then witness and others. The question and answer were as follows ("Bill" is the Defendant-Appellant; "Mr. Harrington" is another party charged who entered a guilty plea, Tr. at 395):
 
 
 15
 [By MR. FIMBERG for the Government]
 
 
 16
 "Q. What did Mr. Harrington tell you?
 
 
 17
 "A. Mr. Harrington told me, Bill wants more buying, a lot more buying. Open accounts. Get everything you can to get more buying.'
 
 
 18
 "MR. KOLBER [for the Defense]: Objection, your Honor, that's hearsay.
 
 
 19
 "MR. FIMBERG: Your Honor, I think at this point, there is more than sufficient evidence for a co-conspirator hearsay foundation." The Court with the attorneys at the bar mentioned an unrelated matter of time and then said (Tr. at 395-397):
 
 
 20
 "THE COURT: Okay. If, indeed, there was a statement by Mr. Kilpatrick--oh, Harrington told me that Bill wants,' not Bill told me.'
 
 
 21
 "MR. KOLBER: That's correct, your Honor.
 
 
 22
 "MR. FIMBERG: I don't think--I'm sorry. Go ahead.
 
 
 23
 "MR. KOLBER: So far, as far as I can hear from the evidence, the only evidence of any kind of involvement by Mr. Kilpatrick is in the nature of bootstrap, where every activity which is claimed to be illegal is something where Harrington says to Johnson, Bill told me this, Bill told me that.
 
 
 24
 "THE COURT: If it had been Mr. Kilpatrick telling him, we'd have a statement against interest; but this is Harrington.
 
 
 25
 "MR. FIMBERG: That's a separate issue. It isn't a statement against interest as to Mr. Kilpatrick. Mr. Harrington's statement is the statement of a co-conspirator.
 
 
 26
 "THE COURT: Can you remind me? What happened to Harrington.
 
 
 27
 "MR. FIMBERG: He pled guilty, your Honor, in front of you; and he'll be a witness in our next--when we come back to trial in a week.
 
 
 28
 "Your Honor, there is an abundance of evidence at this point that Mr. Harrington, Mr. Kilpatrick, Mr. Johnson and others, including Mr. Likes, were all involved in a conspiracy to move this stock using bad checks and that this was a--this started at least in February, extensive testimony today about the directed trade in February, extensive evidence about how all these people were knowingly involved. And I mean we have more than shown, your Honor, an adequate foundation for co-conspirator. I believe we've made a prima facie case of a conspiracy at this point, and the co-conspirator hearsay exception applies.
 
 
 29
 "MR. KOLBER: Your Honor, the only evidence of Mr. Kilpatrick's involvement in here, the only direct evidence, is that he was the head of a corporation and that he wished to move stock in the corporation and increase the investment in it, and that's it. There is no direct evidence that Mr. Kilpatrick's involvement in bad checks, in sending any bad checks up to Canada, in Harrington's maneuvering. There is no evidence of that whatsoever.
 
 
 30
 "MR. FIMBERG: Your Honor, Mr. Kolber and I apparently haven't been listening to the same evidence, because it's abundant and clear at this point, included the directed trade when Mr. Kilpatrick tells Mr. Johnson to go to Canada and buy the stock away so I have money to go to the California seminar and everything that follows from that.
 
 
 31
 "THE COURT: The Court's ruling is that there is sufficient evidence involving conspiracy and also conspiracy involving Mr. Kilpatrick that the Court feels that this is the co-conspirator exception and will admit the evidence over objection. (In open court:)
 
 
 32
 "THE COURT: The objection is overruled and the answer may be given."
 
 
 33
 The court's finding that there was sufficient evidence "involving conspiracy" includes the time element. The testimony concerned, together with the testimony preceding it, demonstrated that the statement was in furtherance of the conspiracy. The Appellant's brief states that the evidence "was overwhelming that a scheme to defraud took place...." The time frame of the conspiracy was established by the evidence and the statement in issue was within it. Appellant's participation was established beyond question by testimony and exhibits. All the relevant preliminary conditions required in Rule 801 were established at the time the trial court ruled. Much of this was in the prior testimony of the same witness, as mentioned, who was on the stand when the only objection was made.
 
 
 34
 We apply the standards or provisions of our en banc case United States v. Perez, 989 F.2d 1574 (10th Cir.). Perez refers to what may be the typical circumstances when Rule 801 is applied to require at least formal findings. However, other circumstances are contemplated and described by Perez when no formal findings are required if the trial court made the "requisite inquiry." Thus the Perez court in a footnote stated:
 
 
 35
 "We do not rule out the possibility that a case could arise in which the record demonstrates without any question that the trial court did make the requisite inquiry even though no formal findings appear. It is also possible that the evidence establishing admissibility would be without doubt sufficient, unimpeachable, and uncontroverted, so that no credibility or factual determination would be required. In either event, a remand would not be necessary."
 
 
 36
 Perez, 989 F.2d at 1582.
 
 
 37
 It is apparent that the trial judge made the "requisite inquiry" and, in our view, the above alternative possibilities in Perez, which do not lead to a remand, were demonstrated in this record. We find no error in the action of the trial court in admitting evidence challenged here.
 
 
 38
 The Appellant has demonstrated no error which exerted a substantial influence on the outcome of the trial, United States v. Jones, 44 F.3d 860 (10th Cir.), nor has any prejudice been shown. United States v. Urena, 27 F.3d 1487 (10th Cir.). The evidence as to guilt was, as the trial court stated, "overwhelming." See id.
 
 
 39
 The scope of review here as in Perez was under the non-constitutional test as no objection based on confrontation was made. Kotteakos v. United States, 328 U.S. 750. There was no plain error which would undermine the fairness of the trial or contribute to a miscarriage of justice.
 
 
 40
 Appellant at trial also raised the issue of ineffective assistance of counsel. In United States v. Galloway, 32 F.3d 499 (10th Cir.), this court held that only "rare claims" which were fully developed at trial could be considered on direct appeal. Appellant here states that this is not such a case and no longer pursues that issue in this appeal.
 
 
 41
 We find no merit to Appellant's contention that the loss was not properly considered for guideline purposes for the level increases thereunder. Also, the checks involved were properly considered in view of the change. The Corporate Quest fraud was relevant as it exhibited a pattern of criminal behavior related to the charged conduct, meeting the test in United States v. Roederer, 11 F.2d 973 (10th Cir.). Finally, the court found that the obstruction of justice conviction was part of the fraud scheme; thus, 3C1.1 applies to raise the level for sentencing.
 
 
 42
 The orders, judgment and sentencing of the trial court are AFFIRMED.
 
 
 43
 IT IS SO ORDERED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3