**UNITED STATES of America, Appellee,**

v.

**Roberto J. ORTEGA, Appellant.**

**No. 89–1550.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1989.

Decided Oct. 6, 1989.

---

John R. Cullom, Kansas City, Mo., for appellant.

Kenneth E. Weinfurt, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and BRIGHT, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Roberto J. Ortega appeals from his conviction of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and (b)(1)(B) (1982 & Supp. 1989). The only issue raised on appeal is whether the district court erred in denying the motion to suppress evidence of the cocaine found in his possession at the Kansas City International Airport. We believe that the evidence was properly seized pursuant to a consensual search. Accordingly, we affirm the conviction.

On September 28, 1988, Agent Carl Hicks of the Drug Enforcement Administration and two Platte County, Missouri detectives were at the Kansas City International Airport awaiting the arrival of Braniff Flight # 650, a direct flight from Los Angeles, scheduled to arrive at 6:55 a.m. The officers were assigned to the airport to intercept shipments of illegal narcotics and United States currency used to purchase illegal narcotics.

The surveillance of this flight was common because Los Angeles is a "source" city, responsible for the majority of cocaine sold in the Kansas City area. As the passengers deplaned, the officers noticed Roberto Ortega and his brother, Asention. Their attention was attracted to the brothers because: (1) both were roughly dressed Latin males; (2) each carried only a small duffel bag; (3) they did not stop to pick up checked baggage; (4) they seemed to be in a hurry to leave the airport terminal; and (5) Roberto Ortega had a tattoo of a rose on his upper shoulder, which Agent Hicks thought might indicate that he was either a gang member or had served time in prison, although Hicks later admitted that it did not necessarily establish either fact. Furthermore, Hicks heard Ortega and his brother speaking English, leading him to believe that they had not arrived in Kansas City as aliens seeking work.

The three law enforcement officers approached the Ortegas as the brothers walked from the terminal to a waiting taxicab. Agent Hicks showed them his badge, told them he was a police officer, and asked if he could talk with them. Roberto Ortega answered "sure." When asked where they were going, Roberto told Hicks that he was going to pick up an automobile in Kansas City and drive back to California. Hicks asked to see a copy of the men's plane tickets, and Roberto told him that they had been thrown away. Hicks then requested to see their identification and both replied that they did not have any. He then asked if they were going to drive to California without a driver's license and Roberto said that they did not know and the two of them had been discussing that dilemma. Agent Hicks then showed them his badge for a second time, told them he was with the DEA on a drug assignment, and asked them if they had brought any illegal narcotics with them. Roberto answered that they had not. Hicks then specifically asked Roberto if he had any drugs in his duffel bag, and after Ortega's denial, requested permission to search the duffel bag. Roberto set his duffel bag in front of Hicks and said "go ahead." Hicks searched the bag and found approximately one-half kilogram of cocaine.

After an indictment was returned and a plea of not guilty entered, a motion to suppress evidence was filed and an evidentiary hearing conducted. Agent Hicks testified to the facts we have recited above as did the two detectives. At the conclusion of the hearing, the district judge, without making detailed findings of fact, ruled that the search in this case was within the parameters established for consensual searches by this court in *United States v. Hernandez*, 854 F.2d 295 (8th Cir.1988), and *United States v. Campbell*, 843 F.2d 1089 (8th Cir.1988). Like this case, *Hernandez* and *Campbell* also involved searches of defendants just outside of airport terminals. In *Hernandez* we held

that the defendant was not seized when the officer carried out a consensual search of his carry-on bag. 854 F.2d at 297. Similarly, in *Campbell* we held that the defendant had consented to the search of his coat and there was no seizure. 843 F.2d at 1095.

After the district court's ruling on the motion to suppress, Roberto Ortega changed his plea and entered a conditional plea of guilty reserving under Rule 11(a)(2) of the Federal Rules of Criminal Procedure his right to appeal the adverse determination of his motion to suppress. On appeal, Ortega argues that the district court erred in denying the motion to suppress as the testimony showed that appellant was seized by law enforcement officers with no reasonable and articulable suspicion to believe he had committed a crime.

We reject the argument made by Ortega. We are satisfied that the evidence demonstrates that the entire encounter was consensual and fourth amendment concerns were not implicated. As the Supreme Court noted in *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (plurality):

> law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.

This court has previously applied this principle in *Campbell.* 843 F.2d at 1092.

The officers in this case approached Ortega in a public place, were not in uniform, did not display their firearms, and did nothing to physically block or detain the defendant. This was simply an approach of an individual by a police officer with a request to answer questions. The questions were asked only after obtaining Ortega's consent and such consent was freely given to search the duffel bag which resulted in the discovery of the cocaine.

We conclude that the district court did not err in denying the motion to suppress. That ruling was based upon this court's recent cases in the area of consensual airport searches.[1] We are somewhat concerned that in an area as complex as this, the district court did not make more extensive findings of fact and conclusions of law. On the other hand, the district court's reliance on *Campbell* and *Hernandez* clearly supports its conclusion that there was an encounter and consensual search. Undoubtedly, the district court viewed the factual situation in this case as simply as we do on our examination of the record. A more complicated factual situation could well make more detailed findings essential for our review. The interview and search were with Ortega's consent and thus provide no basis for suppressing the fruit of that search.

We affirm the conviction.

---

1. In *United States v. Moore,* 872 F.2d 251 (8th Cir.1989), we examined a similar consensual search performed by Agent Hicks outside a Kansas City International Airport terminal. In that case, we held that the district court had properly decided not to suppress the cocaine seized. *Id.* at 252.